This case does present one issue that has been unresolved in a number of cases that have touched the periphery. The circuit and the board have held that under the right factual circumstances, a family can be an identifiable social group under the Act. They've also held that trying to forcibly recruit somebody into the guerrillas is not persecution. And they've also held that being a member of a gang, as counsel for the government cited in the supplemental brief, the Artiga case, that is not a social group or a basis for a persecution claim. This case comes at it from a different angle. I certainly understand the Court's reasoning in Artiga that a gang isn't a social group because it's an antisocial group. And these are not, could not truly be considered characteristics that are immutable, and a person shouldn't be required to change them. And in addition, people who have a fear for their life because of gang membership do have other forms of relief, such as the Convention Against Torture. And I certainly cannot question the holdings on forced recruitment. This is not a forced recruitment case, and this is not a gang membership case. The claim here by Petitioner is that he was singled out for persecution because his entire family resisted guerrilla demands, essentially for money, and that this was the basis for a small identifiable group being targeted. And — Is your small identifiable group his family? Well, the small — the immediate small identifiable group would be his family. I'm not sure what you mean by that. Is your claim that his family is the group or that everybody who resists these gangs are the social group? That his family and any family similarly situated. Not everybody. So you're not restricting it just to his family. You're talking about every family that resists. If they could — if they could provide facts that would allow a reasonable trier of fact to conclude that the persecutory acts were directed against family members because they were in the family, if it — we don't — you'd have to establish, of course, that the persecutors knew that everyone was a member of the family and that there was some particular motive that was related to the family membership for the persecutory acts. I think, obviously, there is a factual basis required in every such case. So we would anticipate that his family and all members of the family would be persecuted by this particular gang. And yet in his testimony, he indicated his mother had not been, and she still lives there. I don't know that I would say that all family members would always be persecuted. I think that one of the questions is that the family members would have to be somehow similarly situated. What his testimony did show was that there were — But she isn't in the group. She's in the family, and she was persecuted because of that. Well, she was — there was something about clipping some things off the roof or something, but there was no showing of who did that or for what purpose. Well, that's true. She still lives there? She still lives there, yes. She's an older woman, and it does appear from both the background material and from the testimony of the petitioner that the primary focus of the guerrillas, for almost all purposes, whether it's money, recruiting people, or just simply terrorizing people, appears to be young men. She received — there were threats in which the brothers — there were four brothers, three of whom are now in the States, one of whom was killed by the gang. And the brothers were told that their mother could be harmed as well. And then there was that incident that Your Honor referred to where somebody tried to cut through apparently some sort of — I guess it seemed like some sort of motion detectors. It wasn't that clear. It appeared that she was concerned about her safety, had taken some steps to protect herself. They weren't completely successful. But in answer to your question, we are not saying that the entire country is within this group or that every family is within this group. It would be families that can demonstrate that their members — that members were being persecuted, and that the reasonable — a reasonable inference would be it was because of their family membership. Counsel, I had, if I may, a slightly different question. As I read the immigration judge's opinion, it appeared that one of the factual findings was that the things that happened arose out of general civil strife and not because of anything particular to your client. If I'm reading that correctly, why would we be compelled to find that there was a reason other than being a victim of general civil strife? Well, I think in the first instance, if there was simply a threat or a persecutory act against an individual and it was not followed up by anything that would indicate that there was now an additional motive, which was family membership, I think there would be no question that that would be subject to the rule that it's just general strife in the country. Well, let me ask you first, do you read the opinion the same way? Do you read that as a finding that that was the cause of the things that happened here? I think that that was a finding, but it was a finding because the immigration judge did, in our view, did not correctly apply the social group formulation and found that his family membership did not create an identifiable social group under the act. Well, I guess I'm wondering whether that was a legal conclusion on the judge's part or whether it was a factual finding, because even if the groups that you have named are considered social groups under the statute, that doesn't automatically create the connection or the nexus that that's the reason for what happened to them. So I'm kind of asking, I guess, about why we would be compelled to find that there's a connection between the family, compelled, not just that it's possible to find, but why we would have to find that. Well, she found, the immigration judge found that the petitioner was credible and gave full weight to his testimony, and his testimony was that on a number of occasions, he and his other brothers were told that the criminal gangs were aware of the family membership and that they were pursuing one brother because of the actions of another. So it was, of course, it's a mixed question of law and fact, but ultimately the immigration judge and the board, which adopted the position, did not correctly analyze whether or not legally this was a social group. They examined the facts, came to the wrong legal conclusion. Now, I do have just a little over two minutes. I would like to leave a little for rebuttal, but, of course, I am going to answer any question anybody has. I have a question for Mr. Shanahan. I'm a little confused picking up on Judge Lawson's question. Is it your position that a particular social group of which your client is a member is his personal family and that the group, that group is separate and distinct from the group of young male El Salvadorans who refuse to acquiesce to Salvadoran gang demands? In other words, do you have two separate groups going, or are you arguing those two groups are melded into one social group? Well, they're two separate groups. The courts and the board have held repeatedly that being attempted recruitment into the guerrillas is not an identifiable social group, so that's the law. They have also held that under the right circumstances, family can be. And what we're arguing here is that where the persecution moves from simply a generalized focusing on young men and focuses in on members of a family because the family has not been cooperating, then it can become a recognizable social group, and it has in this case. And what is that social group? Could you just articulate it for me? Yes. Families who have been identified as in opposition to the persecutors, so that the membership in the family is the purpose of the persecution by the persecutors. Thank you. You're welcome. Thank you. Thank you, Counsel. We'll hear from the government. Good morning. May it please the Court. My name is James Grimes, and I'm here on behalf of the Attorney General. And I'd like to start off by recognizing that Mr. Santos-Lemus's fear may be perfectly reasonable, but that does not mean that he's entitled to asylum because the record reflects that MS-13 is a violent street gang. To use his words, they terrorize everyone, not just members of his family, not just members of his alleged social group. And I think the record reflects that their interest in him was criminal in nature. Well, just because there's broader persecution than a group, if there is a group, doesn't mean that the group isn't targeted. For example, you might have a government that is generally horrible to everybody, but in particular targets members of a certain ethnic tribe. And just because they're generally awful also doesn't necessarily detract. So could you speak to what the evidence shows about the reasons why this applicant was targeted? Certainly, Your Honor. Well, if I understand correctly, he had two claims, and he seems to be backing off the young men in El Salvador who opposed Ganny's claim and now focusing just on the family claim. And as to what happened to his family, I believe his one brother, Jose Ovedo, was beaten on a bus because the gang members wanted money. They then went to the next brother, Luis, because they couldn't find Jose Ovedo, presumably for money. Jesus was a brother who's still there and living in another part of the country. He was with Jose Ovedo, but nothing has happened to him. And as the immigration judge remarked, I think at page 72, that means that Mr. Santos could relocate because nothing happened to him. Then there's his brother, Jose Sicilio, who I think he testified at 134, was killed because he insulted the Maras. So it seems there are a variety of different criminal reasons, you know, revenge for insulting because they want money. In fact, I think he recognized that he testified, Mr. Santos testified at 147 or 148, that he agreed that every time they were interested in him or his brothers, excuse me, involved money. And at 132 or 134, if I remember correctly, 132, he testified that they were trying to keep his family quiet so that they wouldn't, so the family wouldn't report them to the police. So it appears there are a variety of different criminal reasons, and they are a criminal organization. Well, that doesn't mean that they can't target a family. In theory. I'm sorry, Your Honor. In theory, they could be, that's why I asked the question earlier. In theory, they could be criminals. I mean, they could be the mafia. We're kind of out there doing crimes for everybody, but we particularly don't like the other family, the other gang family or whatever. So they're not mutually exclusive. I agree with you. They're not. And if the evidence were compelling that this was a family as a social group claim, then you would, of course, have to send it back to the board to look at that.  And the evidence shows that this is a criminal organization. They terrorize everyone for money, as he testified, for money, for jewelry. And I think the evidence, the record evidence at 191 and 198, suggests that they're responsible for an epidemic of street violence. They engage in a number of criminal activities, and that their rise and, I guess, influence is related to poverty and unemployment. But as to this particular petitioner, I think it's important to note what the agency noted. His mother is safe. His brother, Jesus, is safe, living in another part of the country. He indicated in his brief at page 19 that his mother is not similarly situated. But he's defined a social group, at least in his brief and to the agency below, as his family members. He's testified at 142 that his sisters aren't recognized as family members, but, of course, they're as much family members as his brothers. So I think that although the agency assumed for purposes of this case that a family could be a social group, the record does support the finding that that was not the basis for why the Maras were interested in his brothers. And I think, as Judge Wallace alluded to, the evidence about his mother is really inconclusive as to why someone stole some things from her roof. She doesn't know who did it. And I don't think that the MS ever threatened to steal part of the roof or that that's part of their MO. Their MO seems to be much more violent than that. So I don't know that that really figures into his claim as far as the family as a social group goes. If I understand what he's saying this morning, his attempt to frame the family as a social group is somewhat different than what he proposed to the agency. What he proposed to the agency was simply my family. And now he seems to be backing away from that and coming up with a slightly different formulation of that. And I don't believe, under the exhaustion rules, he can come up with a new formulation for this Court to consider. It would be for the agency to consider that in the first instance. Yes, Your Honor. So could you tell me, was the social group raised before the boards, the social group issue? The social group issue was raised, Your Honor. The family as a social group, not in the terms we're hearing this morning, was more of a general my family. And then, I believe, young men in El Salvador who oppose gang violence. Young men in El Salvador with a social group. And then there was also political opinion raised before the board. That's correct, Your Honor. And I assume counsel is not abandoning those. But what he's talking about is something different, that is that the family has been targeted for persecution by these rampant gangs and that the government is unable to or unwilling to protect this particular family. That's correct. Now, of course, the immigration judge said that the evidence does not support the claim that the government is unable or unwilling. In fact, he never, neither he nor his brothers or anyone, ever reported any of these incidents to the police. Now, we had, as I recall, there's one brother who's been killed. Are the rest of the brothers still in El Salvador? There's one brother, Jesus, who's still in El Salvador. He testified that Jesus was with Jose Ovedo on the bus. Nothing happened to Jesus. He's moved to another part of the country and is safe there. And I think Mr. Santos testified at 148 that his only interaction with the Maras was in his hometown. So those two factors and his mother's safety would support. So the only members of the family left in El Salvador are a brother and a mother, and they've had no problem? That's correct, and his sisters. I believe his sisters are still there and they haven't had problems. And his sister. And she hasn't had a problem. As far as I know. I don't believe he has. The record doesn't show. I think that is correct, Your Honor. Now, as to the young men in El Salvador who oppose gang violence, that's a fairly broad group. It seems to me that that would include anyone who opposes crime, and that would seem to be contrary to this court's decision in Ochoa, where you have, I guess, a significant part of the population could be included in that group. As the agency said, there's no social visibility there. This group is not united by some sort of innate characteristic, by some sort of voluntary association. There's no contextual evidence that they would even know who each other, who the other members of that alleged group, who they are. And I think the social visibility factor is important, but it goes to whether or not this is an actual group that actually exists in the context of this country, as opposed to a group that the applicant has tried to come up with for purposes of his application. And I think that's what we're looking at here. The group is somewhat artificial because there is no contextual evidence that the group actually exists. And so because it's too broad, it's not discrete, which is something I think the court was looking at in Artiga, it would not fit under the definition of a particular social group, as the agency said. And I don't think that in his brief, Mr. Santos has addressed the social visibility aspect of the agency's decision, which is in any event correct. He hasn't addressed the political opinion issue, but I don't think there's any evidence that he ever, that MS-13 has a political opinion, or that he ever voiced a political opinion in opposition to them. In fact, I don't think there's any evidence that he ever actually opposed them. His testimony at 143 was he never insulted them. In fact, at 139, when he said that they attacked him, he didn't say anything to them at all. So I don't know that there's any evidence that he ever opposed them. And there's also no evidence that they ever wanted him or his brothers to join them or that they refused to join. So I'm not even sure he would be a member of the group that he proposes. Is there any evidence in the record that he has indicated that he's presently, any evidence that he was politically or ideologically opposed to the ideals espoused by these gangs? I'm not sure what the ideals would be, Your Honor. They're, I don't. Gain. I guess he's, well, I suppose that anybody who's not a gang member would be opposed to crime, but that would be most of the 6.5 million people in the country. Is there any evidence that the gangs imputed any political opinion? Not that I'm aware of, Your Honor. I mean, it's sort of like the Coors decision in Ochoa, where you had someone who didn't want to be involved with narco-trafficking. Simply opposing the criminal, non-political goals of a criminal organization doesn't make your opposition political. So for the reasons stated in our brief and as I've discussed this morning, we would ask that you deny the petition for review. Thank you. Thank you, counsel. Mr. Shonkin. Yes, in my very brief rebuttal, with regard to the identifiability of the social group, obviously they were identified by the Maras who found various family members and threatened them. The other point I'd like to make is that there's been some concentration on whether or not safety of other members has an impact on this case, and the board made reference only to the mother. And they said that the fact that the mother lives safely in El Salvador undermines this case. In addition to the mother not being really specifically similarly situated, she has received, she has had incidents and she has had contact from the gang. So it's not, I don't believe that the record before us, at least the board's decision, says a whole lot about family members in El Salvador undermining the claim. They didn't address the issue about sisters or the other brother. And that's all I have to say. Thank you. Thank you very much, counsel. The case just is submitted. And we appreciate the arguments of both counsel.
judges: Wallace, Graber, Timlin